

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Gaynor Kendall
Investment Counsel
State Board of Education
Austin, Texas

Dear Sir:

Opinion Number O-5402
Re: Under the facts set forth,
does the State Board of Edu-
cation have the power to allow
the school districts in ques-
tion to prepay bonds if the
district will pay interest
thereon to the date of payment
of such bonds?

We acknowledge receipt of your letter of recent date
reading as follows:

"On April 3, 1943, there was filed with this
office by Ralls Independent School District an
application by said district for permission to
prepay on May 10, 1943, Bonds Nos. 26 to 20 in
the aggregate amount of $3,000 out of the 1925
series of bonds held by the Permanent School Fund
against said district. The interest-paying date
of said bonds is May 10th and November 10th in
each year.

"The State Board of Education did not have a
meeting between March 29th and June 7th, and in
consequence the application was considered by the
Board at its June 7th meeting, at which time the
Board voted to approve the payment as of May 10th,

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

GENERAL
ATTORNEY

subject to your opinion as to the power of the
Board to do so. The district had forwarded to
the Treasurer and there was in his hands before
May 10th a check for the full amount of the bonds
which the district desired to prepay, together
with interest thereon through May 10, 1943.

"You are respectfully requested to advise
whether prepayment of the bonds can be accepted
as of May 10, 1943, in view of the fact that the
district had remitted to the State Treasurer the
amount involved before the interest-paying date,
and had filed its application for permission to
prepay the bonds more than thirty days in advance
of the interest-paying date.

"A similar case also was considered by the Board
at its June 7th meeting, and your advice in the
matter is likewise requested. The Holliday Inde-
pendent School District of Archer County desired to
prepay on April 10, 1943, $10,500 in bonds out of
the series held for the Permanent School Fund. The
district did not make application to the State
Board of Education before the interest-paying date
had elapsed this year, but did send to the State
Treasurer on or about April 9, 1943, a check cover-
ing the amount of bonds and interest due at that
date, together with the sum of $10,500 which it
stated it desired to be applied in prepayment of
bonds in that amount on April 10, 1943. The Treas-
urer returned the remittance to the officials of
the district and advised them that it would be neces-
sary for the district to make application to the
State Board for permission to prepay the bonds in
question; the application was later duly filed by
the district, but after the interest-paying date for
1943 had passed.

"Under the statute has the Board the power to al-
low the Holliday Independent School District to pre-
pay the bonds as of April 10, 1943, or between that
date and the next succeeding interest date if the
district will pay interest on the bonds it desires
to prepay to the date of payment of such bonds?"

Honorable Gaynor Kendall, page #3

Article 2787a, Revised Civil Statutes, 1925, reads as follows:

"The State Board of Education may authorize the trustees of any common school district or of any independent school district of this State to pay off and discharge, at any interest paying date whether the bonds are matured or not, all or any part of any bonded indebtedness now owned or hereafter to be owned by the State Permanent School Fund, outstanding against any common school district, or any independent school district in this State.

"It shall be the duty of the school trustees of any common school district, or any independent school district of this State desiring to pay off and discharge any bonded indebtedness now owned or hereafter to be owned by the Permanent School Fund of this State, outstanding against such district or districts, before maturity thereof, to make direct application in writing to the State Board of Education at least thirty days before any interest paying date on said bonds, making known to said State Board of Education the desire of said trustees to pay off and discharge said bonded indebtedness, or any part thereof, describing said bonds or the part thereof that the trustees desire to pay off and discharge; and it shall be the duty of the State Board of Education upon receipt of such application to act thereon in such manner as they deem best and notify the applicant or applicants whether the application is refused or granted in whole or in part; provided, that only such tax money as has been collected by virtue of tax levies made for the specific purpose of providing a sinking fund and paying interest on the particular bonds to be redeemed shall be expended in the redemption, taking up, or paying off of such bonds as provided in this Act; unless said bonds are being redeemed for the purpose of being refunded; and the application of the board of trustees of any common or independent school district desiring to retire bonds as herein provided shall

Honorable Gaynor Kendall, page #4

include an affidavit to that effect in their
application; and provided further, that it shall
be unlawful for any person upon whom any duty
rests in carrying out the provisions of this
law to give or receive any commission, premium,
or any compensation whatever for the performance
of such duty or duties.

"The provisions of this Act shall apply also
to the governing boards of all cities, counties
and political subdivisions in this State whose
bonds are owned or may hereafter be owned by the
Permanent School Fund of the State."

From the above it will be seen that the State Board
of Education is given broad discretionary powers. It may, in
its discretion, grant or refuse an application, but it is made
the duty of the Board "upon receipt of such application to act
thereon in such manner as they deem best and notify the appli-
cant or applicants whether the application is refused or grant-
ed in whole or in part." From the statement of facts stated in
your letter, the Ralls Independent School District filed its ap-
plication more than thirty days prior to May 10, 1943, the int-
erest paying date, and forwarded to the State Treasurer a check
for the full amount of principal and interest due on that date,
but the State Board of Education did not have a meeting until
June 7, at which time the Board voted to approve the payment
as of May 10, subject to the opinion of the Attorney General
as to the power of the Board to do so. We find nothing in the
article above quoted which limits the time in which the Board
must act, except the words "upon receipt of the application."
The Board acted at its very first meeting after the receipt
of the application, which was the first opportunity it had to
pass upon it, and you are advised that it is our opinion that
the Board had the power to do so at that meeting.

With respect to the Holliday Independent School Dis-
trict it appears that the District did not file an application
thirty days prior to the April 10th interest paying date as re-
quired by Article 2787a, but did file an application after that
date. It is our opinion that this application does not comply

with the plain provisions of the statute and it is, therefore, our opinion that the Board does not have the authority to permit the district to prepay these bonds until the next succeeding interest paying date.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 9, 1943

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

By *C. F. Gibson*

C. F. Gibson
Assistant

CFG-s





APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN